UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRANDI DANIELLE PLAIR,

    Plaintiff,

v.                                                     CASE NO. 3:20-CV-0658-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

    This is an action for review of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). Plaintiff contends the Administrative Law Judge (ALJ) failed to evaluate her complex regional pain syndrome (CRPS) in accordance with Social Security Ruling 03-2p. After considering the administrative record (doc. 20) and the parties' arguments (docs. 24, 28), I find that substantial evidence does not support the ALJ's decision. I remand.

    A.    *Background*

    Plaintiff Brandi Plair alleges she became disabled on June 3, 2015, due to migraines, asthma, seizure disorder, arthritis, anxiety, depression, nerve damage in her right eye, and reflex sympathetic dystrophy (RSD).[1] (R. 250) Plaintiff's date of last insured (DIB) is September 30, 2016; she must show she became disabled by this date to receive benefits. (R. 12)

---

[1] RSD is a form of CRPS. Both are chronic conditions characterized by severe burning pain, most often affecting one of the extremities (arms, legs, hands, or feet).

Plaintiff was born on January 21, 1981, and was 35 years old on her date last insured (DLI). (R. 20) She graduated high school and took college classes for two years. (R. 46) She has past work experience as a cashier at T.J. Maxx, a waitress at Gorgi's BBQ, and a marketing representative at Jacksonville Medical Imaging. (R. 48-51) She testified that after her boyfriend died of a heart attack in 2014, she sank into a deep depression and quit her job. (R. 51) Then, in May 2015 she injured her left foot running to usher a neighbor's daughter to safety during a neighborhood shooting. In Plaintiff's words: "[T]here was a shooting in our neighborhood. And when I heard the gunshot go off, I looked out the window, and I was on the phone with 9-1-1, and ran out through the garage. And I saw our neighbor's daughter walking home, and I ran out to get her because the gunman was running past her, and I was afraid he was going to shoot her. So as I ran out, I was barefoot, and my big toe popped, they said, as far back as it could have gone which resulted in the fractures in my foot in the beginning." (R. 53)

About a year after her foot injury, Plaintiff was diagnosed with RSD in her left foot. (R. 52) She testified: "The pain is very, very bad. I am dealing with severe depression and severe anxiety . . ." (R. 54) In her words, RSD has "affected me really bad emotionally and physically. Because my whole life has kind of gone upside down." (R. 52) She wears an orthopedic boot on her left foot to help with her pain, but she falls a lot and sometimes uses a cane. (R. 57)

During the relevant period – Plaintiff's alleged onset date of June 3, 2015, through her DLI of September 30, 2016 – Plaintiff testified she lived with her parents and now-husband. She did not drive, and she got help with laundry. She did only minor household chores like

2

clean her room, she took baths instead of showers to minimize her risk of falling, and she said she could lift less than 10 pounds, sit for about 10 minutes at a time, stand for about 15 minutes, and walk for about 15 minutes. (R. 50-62)  She did not socialize regularly with friends or family: "I was very isolated.  I had cut off my friends.  I was cutting off my family." (R. 61)

After a hearing, the ALJ found in a June 4, 2019 decision that Plaintiff suffers from the severe impairments of "left extremity bone fracture, degenerative disc disease, epilepsy, migraine headaches, and right eye vision loss." (R. 13)   Despite these impairments, the ALJ determined that Plaintiff was not disabled because she retained the residual functional capacity (RFC) to perform light work with limitations:

> [S]he had the ability to lift up to twenty pounds occasionally, and to lift and/or carry up to ten pounds frequently.  In an eight-hour day, the claimant could sit for up to six hours, and stand/walk for about six hours, with normal breaks.  She could occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ramps.  She could never climb ropes, ladders, or scaffolds.  The claimant was limited to occupations that did not require right eye far acuity or depth perception.  She was also limited to occupations allowing for the use of a walking boot.

(R. 15)  After consulting a vocational expert (VE), the ALJ found that, with this RFC, Plaintiff could not perform her past relevant work but could work as a tanning salon attendant, ticket taker, and parking lot cashier. (R. 20-21)  Plaintiff appealed the ALJ's decision to the Appeals Council (AC), which denied review. (R. 2)  Her administrative remedies exhausted, Plaintiff filed this action.

    B.    *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

3

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations. These regulations establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The

ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    *Discussion*

Plaintiff's arguments are hard to pin down. She lists three on the first page of her brief: (1) "Plaintiff argues that her complex regional pain syndrome (CRPS) and associated mental impairment(s) along with the combination of all impairments significantly limited her ability to perform basic work activities while preventing Plaintiff from being able to sustain work activities;" (2) "The Commissioner did not substantially consider the treating medical evidence of record;" and (3) "Whether or not the vocational hypothetical relied upon by the ALJ comprehensively described Plaintiff's functional capacity resulting from her combination of impairments." (Doc. 24 at 1). Then, under the heading "Summary of Argument," after summarizing the procedural history of her claim and the standard of review, Plaintiff enumerates these four different errors with the ALJ's decision: (1) "The ALJ did not recognize the severity of plaintiff's primary impairment, [CRPS] along with Plaintiff's associated emotional impairments;" (2) "The rationale did not evidence any consideration of SSR 03-

5

2p;" (3) "The ALJ miscalculated plaintiff's [RFC] by not recognizing the combined effect of all diagnosed medical impairments and by improperly discounting the treating medical evidence[;]" and (4) "Plaintiff argues that she has been unable to sustain employment and that she is disabled by the combined effect of her multiple severe impairments." (Doc. 24 at 5). But over the next nine pages, Plaintiff summarizes the medical evidence. Finally, under the heading "Plaintiff's Objections to the ALJ's decision," she lumps her arguments together in a general challenge to the ALJ's decision.

Taking all of this into consideration, the Court interprets Plaintiff's brief as supporting these arguments: in light of SSR 03-2p, which provides guidance to ALJs in evaluating claims of disabling CRPS, the ALJ erred in determining Plaintiff's CRPS to be non-severe, discrediting her complaints of pain, formulating her RFC for light work, and posing an incomplete hypothetical to the VE. However worded, the underlying issue is whether the ALJ at step five satisfied his burden of proof that Plaintiff is not disabled. To meet this burden, the ALJ relied on the testimony of a VE. (R. 64-74) The ALJ's RFC findings served as a predicate to the hypothetical, so the more succinct question is: Did the ALJ meaningfully consider Plaintiff's CRPS in light of SSR 03-2p when formulating both her RFC and the hypothetical question posed to the VE? The answer is no.

To begin, Plaintiff's contention that the ALJ should have listed CRPS, depression, and anxiety among her severe impairments misses the mark, because step two requires only that the ALJ determine whether Plaintiff suffers from at least one severe impairment. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (holding "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments

6

that together qualify as severe" is enough to satisfy step two). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 385 F. App'x 823, 825 (11th Cir. 2010) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). So, the ALJ's determination that Plaintiff's CRPS, anxiety, and depression are non-severe only has import if Plaintiff can demonstrate limitations in steps three through five of the sequential evaluation process that the ALJ did not properly consider. Merely the existence of CRPS does not dictate a finding of disability; the ALJ must still determine whether the condition precludes gainful employment.

To backtrack, in cases involving complaints of disabling CRPS, ALJs are directed to SSR 03-2p. According to the ruling, CRPS/RSD is a chronic pain syndrome most often resulting from trauma to a single extremity. SSR 03-2p, 2003 WL 22399117, at *1 (Oct. 20, 2003). In individuals with this syndrome, "the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." *Id*. The ruling instructs that "conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved." *Id*. at *5; *see also Brooks v. Barnhart*, 428 F.Supp.2d 1189, 1191-92 (N.D. Ala. 2006) (summarizing SSR 03-2p). The ruling "repeatedly reminds reviewing officers to carefully consider 'the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" *Bernstein v. Astrue*, No. 3:09-cv-17-J-34MCR, 2010 WL 746491, at *8 (M.D. Fla. Mar. 3, 2020) (quoting SSR 03-2p). And the signs and symptoms of CRPS may not be "present continuously" or "may be present at one examination and not appear in another." SSR 03-

7

2p, 2003 WL 22399117, at *4. CRPS is a disease for which "a diagnosis necessarily hinges on a plaintiff's subjective symptoms," and where "objective findings can be minimal," therefore "the proper evaluation of plaintiff's subjective pain testimony is crucial." *Bernstein*, 2010 WL 746491, at *8 (citation omitted).

Following the guidance of SSR 03-2p, courts in the Eleventh Circuit have found reversible error when an ALJ relies on the lack of objective medical evidence to discount the subjective complaints of a claimant with CRPS. *See, e.g. Squires v. Comm'r of Soc. Sec.*, 6:20-cv-477-LRH, 2021 WL 4197716, at *6 (M.D. Fla. Sept. 15, 2021); *Volk v. Astrue*, No. 3:11-cv-533-J-TEM, 2012 WL 4466480, at *5 (M.D. Fla. Sept. 27, 2012) (absence of objective medical tests cannot be cited as a legitimate basis for rejecting plaintiff's subjective pain complaints); *Graves v. Comm'r of Soc. Sec. Admin.*, No. 3:11-cv-667-J-MCR, 2012 WL 3715228, at *7 (M.D. Fla. Aug. 28, 2012) (same). Other courts have found error where an ALJ failed to specifically discuss a claimant's CRPS during the analysis of the claimant's credibility, or where the ALJ failed to cite to or address SSR 03-2p, even if the ALJ finds the impairment to be severe at step two or provides other reasons for discounting the claimant's testimony. *See Squires*, 2021 WL 4197716, at *6 (collecting cases).

After careful review of the record, I find the ALJ did not engage with SSR 03-2p at all, and this error not only undermines the ALJ's consideration of Plaintiff's subjective complaints but pulls the substantial evidence rug out from under the ALJ's decision in general. The ALJ stated: "At the hearing, the claimant also testified to an inability to work in any job on a full-time basis during the relevant period. The claimant specifically reported anxiety, neck pain, and the residual effects of a fracture in her lower extremity as preventing work. She reported

8

the need to wear a walking boot and elevate her leg throughout the day. The claimant also alleged significant restrictions in her ability to sit, stand, walk, lift objects, and perform her activities of daily living during the relevant period through the date last insured." (R. 16) The ALJ continued, observing Plaintiff "received conservative treatment, which consisted primarily of prescription therapy and injection therapy, and reported improvement in symptoms. The claimant was also able to remove her boot cast to go down a watery slip-and-slide during the relevant period, which in not inconsistent with an ability to perform a reduced range of light exertion work." (R. 20)

That the ALJ did not specifically cite SSR 03-2p is not in and of itself reversible error if the ALJ's decision reflects he considered and applied the ruling. But, in fact, he mentions Plaintiff's RSD only once, stating: "Records from June 21, 2016, note the claimant was followed by pain management for chronic pain and reflex sympathetic dystrophy (RSD)." (R. 17) What follows is the ALJ's recap of the medical evidence, with no indication he considered Plaintiff's impairments or pain complaints through the lens of SSR 03-2p.[2]

---

[2] Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate (*i.e.*, 20 C.F.R. § 404.1529), are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1529. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 404.1513(b)(2)-(6). Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

Plaintiff reported to the Jacksonville Memorial Hospital ER on May 29, 2015 (five days before her alleged onset date), with a big toe injury she said she got while running. (R. 349) Her X-ray was negative for a fracture; her doctor prescribed oxycodone and a post-op shoe. (R. 351-52) But Plaintiff returned to the ER two days later with foot pain. (R. 344) This time, she told staff she injured her foot while running to protect a child from a neighborhood shooter. Her big toe was bruised, but the pain did not radiate and she denied numbness or tingling. It was too soon for Plaintiff to have another X-ray. The ER doctor wrote: "seen here on Friday pm for same. xrays negative. placed in post-op shoe and crutches. lortab 5 mg not helping. has used them all. . . . basically out of pain med and it did not work." (R. 344, 346) She was diagnosed with a left big tow sprain and a left foot sprain.

Then Plaintiff treated with Douglas Pennington, D.O. of Physician Services Group for her toe injury, which Plaintiff characterized as extreme. Dr. Pennington referred her to orthopedist Georges Bahri, M.D., who examined her in June 2015 and observed she was "ambulating and full weight bearing and is wearing a walker boot. . . . She is insistent that MRI of her foot be ordered." (R. 370, 393) Dr. Bahri ordered an MRI of Plaintiff's left foot, which was normal. (R. 419)

On August 8, 2015, Plaintiff was back at the ER for left foot pain. She explained that she took off her walking boot to go down a slip and slide and reinjured her toe. Her X-ray was normal. The ER doctor did not prescribe narcotics "due to multiple prescriptions for pain medication in the past." (R. 341) In September 2015, Dr. Pennington noted that Plaintiff's pain was eight out of ten, and she was depressed and not sleeping; he gave her an

injection in her left foot the next month. (R. 367-68)  Dr. Pennington treated Plaintiff about once a month until March 2016, noting relatively normal exam findings. (R. 405-16)

At that point, in March 2016, Plaintiff began treating with Ferdinand Formoso, D.O. of Coastal Spine and Pain Center for her left foot pain, which she reported was eight out of 10 on the pain scale. (R. 423)  Plaintiff told Dr. Formoso she had fractured her left big toe the previous year (imaging at the time of the injury revealed no fracture) and her pain had been disabling since then. (*Id.*)  When his examination yielded normal results almost across the board, Dr. Formoso assessed Plaintiff with CRPS, foot pain, and back pain and noted her pain was "primarily neuropathic in nature." (R. 423-26)  He referred her to a physical therapist and ordered a bone scan, but it does not appear she followed up on this.

Plaintiff continued treating at Coastal Spine and Pain Center approximately once a month between March 2016 and January 2017.  In June 2016, Dr. Formoso administered a ganglion block injection.  The next month Plaintiff tearfully reported it had improved her pain "by almost 100%," and she was able to increase her activities. (R. 555)  Plaintiff had another block injection in August 2016; at her follow up appointment she reported her pain level was "reasonable." (R. 543)  From then on, Dr. Formoso treated Plaintiff's CRPS with medication, but her pain always resurfaced.  For example, between appointments with Dr. Formoso, Plaintiff went to the ER in June 2016 complaining of pain in her left foot that she said was an eight out of 10 on the pain scale; the ER physician noted a differential diagnosis of RSD. (R. 511)

In November 2016, Plaintiff told Dr. Formoso her pain is worsened by "everything," improved with medication, and she claimed she could not function at all. (R. 532)  She had

11

run out of her prescriptions early because someone "was tampering with her medications. Had more medicines stolen prior to her getting a safe for her medications. She had to stretch out the Percocet and morphine doses. She also admitted to taking her father's Xanax and other tablets." (*Id.*)  Dr. Formoso authorized a limited refill of Plaintiff's medications and wrote: "I had a very frank conversation with patient regarding the past 2 urine screens and that it appears she is going down a road that makes me uncomfortable." (R. 534)

Plaintiff picked up treatment with Dr. Pennington again in August 2016, seeing him every month or so until January 2019 (Plaintiff's DLI is September 2016, so much of Dr. Pennington's treatment was outside the relevant period). (R. 650-75) RSD/CRPS first appears on the list of Dr. Pennington's diagnoses in August 2016 (after Dr. Formoso diagnosed it), one month before Plaintiff's DLI. (R. 675)  Each of Plaintiff's visits with Dr. Pennington generated a one-page handwritten treatment form that was very similar appointment-to-appointment, indicating Dr. Pennington treated Plaintiff's pain with medication management.

Then, Dr. Pennington completed a "RSD/CRPS Medical Source Statement" in April 2019 (four months after his last appointment with Plaintiff and two and a half years after her DLI), at Plaintiff's request. (R. 676-80)  He indicated Plaintiff suffers from these extreme limitations: she could stand and sit for only 30 minutes at a time each, could not walk at all, would need to rest every hour for up to an hour at a time, would be off task 25% of every workday, would miss more than four days of work a month, and was incapable of even low stress jobs. (*Id.*)  The ALJ assigned this opinion "little weight," concluding it was "inconsistent with the course of treatment, good response to treatment, objective findings,

12

medical evidence and overall evidence through the date last insured as discussed herein." (R. 19)[3]

By my review, however, Drs. Pennington and Formoso both noted Plaintiff's diagnosis of RSD/CRPS during the relevant period and treated her for the impairment. Additionally, Plaintiff's ER doctor, in June 2016, independently reported a suspected diagnosis of RSD. (R. 511)  On the other hand, orthopedist Dr. Bahri, neurologist Rajul Parikh, M.D., and pain management doctor Justin Spooner, M.D. all treated Plaintiff in 2015 or 2016, and none diagnosed Plaintiff with CRPS.  This conflicting evidence is part and parcel to the transitory and "unique clinical syndrome" that is CRPS.  SSR 03-2p.  Considering that the ALJ did not cite to or refer to SSR 03-2p, did not specifically evaluate Plaintiff's CRPS (other than by passing reference), and did not provide a rationale for this omission, I am uncertain he was aware of the unique nature of CRPS and the agency's policy for evaluating claims based on it.  SSR 03-2p; *see Volk*, 2012 WL 4466480, at *5.  This error permeated the ALJ's decision:  I cannot evaluate whether the ALJ properly considered Plaintiff's subjective pain complaints, whether he had good cause to discount Plaintiffs' treating physician's

---

[3] SSA regulations applicable when Plaintiff filed her application required an ALJ to give "controlling weight" to a treating physician's opinions if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence in [the] case record." *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094 (11th Cir. Aug. 12, 2021) (quoting 20 C.F.R. § 404.1527(c)(2)).  Eleventh Circuit case law dictates that a treating physician's opinion must be given substantial or considerable weight unless good cause is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

13

opinions, or whether his RFC predicate included in the hypothetical he posed to the VE (which did not include CRPS-associated pain) was based on substantial evidence. Consequently, I find that the ALJ's decision is not supported by substantial evidence. On remand, the ALJ is instructed to specifically consider SSR 03-2p in evaluating Plaintiff's CRPS and to identify what, if any, limitations CRPS placed on her ability to work during the relevant period.

    D.    Conclusion

For the reasons stated above, it is ORDERED:

(1) The Commissioner's decision is REVERSED and REMANDED for further administrative proceedings consistent with this Order; and

(2) The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on March 9, 2022.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE